IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) ) | CIVIL ACTION |
| v. | ) ) | NO.: 06-1309 |
| CH-IK PAINTING, INC., *et al.* | ) ) ) | |
| Defendants | ) | |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff, the International Painters and Allied Trades Union Industry Pension Fund ("Pension Fund" or "Plaintiff"), respectfully moves this Court for entry of judgment by default against Defendants, CH-IK Painting, Inc. ("Company") and Elias Kafantaris, ("Individual Defendant" and together with Company, "Defendants"), jointly and severally, in the amount of $94,572.45, which includes contributions due for the period January 2002 through August 2006, interest, liquidated damages, audit costs and attorneys' fees and costs incurred by the Pension Fund pursuant to 29 U.S.C. §185(a) and 1132(g)(2)(A) through (D), and for injunctive relief.

In support of this Motion, Plaintiff relies upon the allegations in its Complaint, the Declaration of Thomas Montemore[1] and the Declaration of Kent Cprek.[2]

---

[1] The Declaration of Thomas Montemore ("Montemore Declaration") is attached to this Motion as Exhibit 1. The exhibits referenced in the Montemore Declaration are attached as Exhibits 2-5.

[2] The Declaration of Kent Cprek ("Cprek Declaration") is attached to this Motion as Exhibit 6. The exhibit referenced in the Cprek Declaration is attached to this Motion as Exhibit 7.

172748_1.DOC

The grounds for this Motion are as follows:

1. Prior to the commencement of this action, the Plaintiff attempted to resolve this delinquency in an amicable manner.

2. The requested payments were not received and the Complaint in this matter was filed on July 24, 2006. The Complaint was served on the Elias Kafantaris on August 5, 2006 and on the Company on August 30, 2006 as appears from the Affidavits of Service duly filed with the Court.

3. No Answer to the Complaint has been filed by the Defendants.

4. On September 20, 2006, Plaintiff filed a Request to Clerk to Enter Default against the Defendants pursuant to Fed. R Civ. P. 55(a). A copy was sent via first-class mail, postage prepaid, to the Defendants.

5. On September 21, 2006, the Clerk of the Court entered default against all Defendants.

6. Defendants are neither infants nor incompetent people and the Individual Defendant is not in the military service.

**WHEREFORE**, Plaintiff seeks the following relief:

(a) Judgment entered as set forth in the proposed Order and Judgment attached to this Motion;

  (b)  Such other and further relief as the Court deems just, necessary and appropriate.

              Respectfully submitted,

              JENNINGS SIGMOND, P.C.

          BY: s/ Kent Cprek
             KENT CPREK
             Bar No. 478231
             SANFORD G. ROSENTHAL
             Bar No. 478737
             The Penn Mutual Towers, 16th Floor
             510 Walnut Street, Independence Square
             Philadelphia, PA 19106-3683
             (215) 351-0615/0669
             Attorneys for the Fund

Date: September 28, 2006
OF COUNSEL:
Jessica L. Tortella
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION |
| v. | ) ) | NO.: 06-1309 |
| CH-IK PAINTING, INC., *et al.* | ) ) ) | |
| Defendants | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55(b) AGAINST DEFENDANTS.**

Plaintiff, the International Painters and Allied Trades Union Industry Pension Fund ("Pension Fund" or "Plaintiff"), by its legal counsel, submits this Memorandum of Law in Support of its Motion for Judgment by Default.[1]

The Plaintiff served its Complaint on Defendants, CH-IK Painting, Inc. ("Company") and Elias Kafantaris, ("Individual Defendant" and together with Company, "Defendants"), on August 5, 2006 and August 30, 2006. To date, Defendants have failed to answer the Complaint or otherwise defend this action. On September 20, 2006, Plaintiff filed a Request For Entry of Default against Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The default was entered against all defendants on or about September 21, 2006.

In light of Defendants' default and Defendants' continuing failure to appear or otherwise

---

[1] Attached to the Motion accompanying this Memorandum is the Declarations of Thomas Montemore ("Montemore Declaration") and Kent Cprek ("Cprek Declaration"). Also attached is a proposed form of Default Judgment.

172748_1.DOC

defend, the Pension Fund is entitled to judgment by default against Defendants without a hearing. Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983); Draisner v. Liss Realty, 211 F. 2d 808 (1954). Moreover, where defendants, such as those here, fail to respond to the Complaint, all factual allegations in the Complaint are deemed admitted. Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978) (allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent conveyance or voidable preference).

Company is and has been party to collective bargaining agreements (singly or jointly "Labor Contract") with the various local unions and district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"). See, Exhibit 1, Montemore Declaration, ¶5; Exhibit 2, a true and correct copy of relevant provisions from the Labor Contract. Under the Labor Contract, Company is required to remit fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore Declaration, ¶6; Exhibit 2, Labor Contract, at Art. IV, Sec. 3. The failure to pay these fringe benefit contributions and other amounts results in a delinquency to the Plaintiff.

In addition, prior to the commencement of this lawsuit the Pension Fund and the Defendants entered into two settlements. Pursuant to the terms of the February 17, 2006

Promissory Notes ("Notes") and a Personal Guarantees ("Guarantees")[2,3] executed on March 3, 2006, by Individual Defendant, the Pension Fund settled the delinquencies and was to receive payments totaling $10,766.55.  Defendants defaulted on both settlements as a result of their failure to pay the installment payments.  True and correct copies of the February 17, 2006 Promissory Notes and Personal Guarantees are attached as Exhibits 3-4.

## ARGUMENT

A.  **ENTRY OF JUDGMENT AGAINST DEFENDANTS, JOINTLY AND SEVERALLY, FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS ENTIRELY APPROPRIATE**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore Declaration, ¶5; Exhibit 2, Labor Contract. The Labor Contract provides for the payment of contributions to the Pension Fund for time worked by or paid to employees who perform work covered by its terms and conditions. See, Exhibit 1, Montemore Declaration, ¶6; Exhibit 2, Labor Contract, at Art. IV, Sec. 3. Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Pension Fund. Ibid. Under the Labor Contract, the Pension Fund also has the right to audit the signatory's payroll books and related records to determine that all of the required contributions have been paid. See, Exhibit 1, Montemore Declaration, ¶¶5, 14; Exhibit 2, Labor Contract, at Art. IV, Sec. 3; Complaint, Exh.

---

[2] On March 3, 2006, the Defendants executed two settlement agreements dated February 17, 2006. The first agreement totaled $9,881.34 and was for amounts due to the Fund for work performed in the jurisdiction of District Council No. 6.  The Note was for amounts due to both the Pension Fund and DC 6. The Pension Fund is only attempting to recover amounts due to it in the Note and not to DC 6.

[3] The second agreement executed by the Defendants totaled $8,477.95 and was for amounts due to the Fund for work performed in the jurisdiction of Local Union Nos. 6, 438, 476, 500 and 1275.

1, Art. VI, Sec. 6. Finally, under the terms of the Labor Contract, the employer agrees to be bound by the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement," attached as Exhibit 1 to the Complaint filed in this matter and incorporated by reference) and the International Painters and Allied Trades Industry Pension Plan ("Plan," attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) and by all amendments thereto and actions taken by the trustees of the Pension Fund. See, Complaint, ¶¶ 5-7; Exhibit 1, Montemore Declaration, ¶¶ 5, 6; Exhibit 2, Labor Contract, at Art. IV, Sec. 3.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1145, provides:

> Every Employer who is obligated to make contributions to a bargained agreement shall ... make contributions in accordance with ... such agreement.

If an employer fails to make the contributions as required by the collective bargaining agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section 515:

  A. the unpaid contributions;

  B. interest on the unpaid contributions;[4]

  C. an amount equal to the greater of:

    (i) interest on the unpaid contributions; or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)

---

[4] Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. See, Complaint, Exhibit 2.

        of the amount determined by the Court under subparagraph (a);[5]

  D.  reasonable attorneys' fees and costs of the action, to be paid by the Defendants; and

  E.  such other legal or equitable relief as the court deems appropriate.

As stated above, Company has failed to submit contributions and/or remittance reports for the period January 2002 through August 2006. See, Exhibit 1, Montemore Declaration, ¶9. As a result, Plaintiff is entitled to judgment in at least the amount of $94,572.45.

  1.  **Defendants owe fringe benefit contributions in the amount of $71,817.77**

Defendants have failed to submit the required contributions in the total amount of $71,817.77 for the period January 2002 through August 2006. See, Exhibit 1, Montemore Declaration, ¶9. These amounts consist of contributions from the defaulted promissory notes, contribution delinquencies from the audit and current amounts due which are estimated because the Defendants have failed to submit the contractually-required remittance reports. The contribution amounts due are detailed in the following paragraphs.

First, Defendants owe $2,123.50 in contributions for the months of September 2005 and October 2005 based upon the defaulted February 17, 2006 Promissory Note and Personal Guarantee for employees performing work in the jurisdiction of District Council No. 6.

---

[5] ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint, Exhibit 1.

In addition, Defendants owe $6,397.35 in contributions for the period of September 2005 through November 2005 based upon the defaulted February 17, 2006 Promissory Note and Personal Guarantee for employees performing work in the jurisdiction of Local Union Nos. 6, 438, 476, 500 and 1275.

In addition, based on an audit performed on February 21, 2006, Defendants owe $39,726.31 in audit delinquencies for the period January 2002 through December 2005. See, Exhibit 5, Audit Report.

Finally, Defendants owe the Pension Fund at least $23,570.61 in estimated contributions for the period of February 2006 through August 2006. The estimated contributions are calculated by the Pension Fund based on the average of the last three months of remittance reports filed by Company. The contributions are estimated because Company failed to submit the required remittance reports for that period. See, Exhibit 1, Montemore Declaration, ¶9.

2. **Defendants owe interest in the amount of $4,201.99**

The rules and regulations as set forth in §10.12(b)(2) of the Plan set the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. Interest accruing through September 30, 2006 on Defendants' delinquent contributions totals $4,201.99 ($699.39 on the defaulted Notes, $3,040.86 on the audit delinquency and $461.74 on the current estimated unpaid contributions). See, Exhibit 1, Montemore Declaration, ¶10; 29 U.S.C. §1132(g)(2)(B); 26 U.S.C. §6621. Interest will continue to accrue until the contributions are paid.

3. **Defendants owe audit costs in the amount of $931.37**

The determination of an employee's eligibility for benefits is made based upon information contained on the remittance report. An employer's liability to the Pension Fund is

also based on information contained in the report. When a remittance report is not submitted or contains incorrect information, then a proper determination of eligibility and amounts due to the Pension Fund is impossible. In such a case, the only means of obtaining the necessary information is to review the employer's payroll records. <u>Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc.,</u> 472 U.S. 559, 581 (1985).

Article VI, Section 6 of the Agreement and Declaration of Trust of the Pension Fund provides for recovery of audit costs in the event that an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. On February 21-22, 2006, the Pension Fund completed an audit of the Company's payroll books and related records covering the period January 1, 2002 through December 31, 2005. This audit revealed a consistent pattern of underpayments and non-payments of contributions to the Pension Fund. As a result, Company is responsible for the cost of the audit. The cost of the audit is $931.37. Montemore Declaration, ¶9.

    4.    **<u>Defendants owe liquidated damages in the amount of $14,363.57</u>**

ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. The total amount of liquidated damages is $14,363.57. The amount of liquidated damages is greater than the interest due. Therefore, the amount of liquidated damages which Defendants owe is $14,363.57. <u>See</u>, Exhibit 1, Montemore Declaration, ¶11; 29 U.S.C. §1132(g)(2)(C).

5. **Defendants owe attorneys' fees in the amount of $3,257.75**

Plaintiff has incurred $3,257.75 ($5,704.36 from the defaulted settlement agreement and $4,508.29 from the current litigation) in attorneys' fees and costs in connection with this matter through September 29, 2006. See, Exhibit 1, Montemore Declaration, ¶8; Exhibit 6, Cprek Declaration, ¶3; Exhibit 7. See, 29 U.S.C. §1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and collection of any judgment entered by the Court. See, International Painters and Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

6. **The Pension Fund is entitled to injunctive relief**

The failure of Defendants to comply with their contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. The Pension Fund is obligated by express mandates of ERISA and by the documents and instruments by which it is administered to provide benefits and pension credits to all of Company's employees who are otherwise eligible to receive them. 29 C.F.R. 2530-200b-2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub. nom., Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc., 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether Defendants make the contributions. For example, if employees perform work covered by the collective bargaining agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits

regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources.

Additionally, where, as here, Defendants fail to remit their contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Combining this loss of investment income with the Pension Fund's requirement to continue paying benefits to Company's employees (as well as to the employees of other signatory contractors) will eventually affect the actuarial soundness of the Pension Fund as well as deplete the resources available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendants' failure to pay their contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Company's employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendants' failure to comply with their contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendants' malfeasance causes the Pension Fund, the Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986).

B.  **COMPANY SHOULD BE ORDERED TO PRODUCE THE APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND DEFFENDANTS MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING**

The determination of an employee's eligibility for benefits is made based upon information contained in the remittance report, to be filed monthly by each and every signatory employer. A proper determination of eligibility is not possible if remittance reports are not submitted or if they contain incorrect information. See, 29 U.S.C. §1132(g)(2)(E) (equitable relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F. Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension Fund v. Hartline – Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit Pension Fund v. Northwest Concrete, 640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required contributions and correctly reported hours worked and paid to its employees, the Pension Fund has the right to review all of the employer's records that relate to its contributory obligation. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Labor Contract and Trust Agreement obligate Defendants to allow the audit. See Exhibit 1, Montemore Declaration, ¶¶5, 6, 13-14; Exhibit 2, Labor Contract, Art. IV, Sec. 3; Complaint, Exhibit 1, Art. VI, Sec. 6.  The scope of records subject to review is broad, and include those records the auditors reasonably deem necessary to conduct an audit. DeMarco v. C & L Masonry, 891 F.2d 1236 (6th Cir. 1989). See Exhibit 1, Montemore

Declaration, ¶¶13-14. In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. Ibid.

An audit is necessary in this case in order to determine the exact amount due to the Pension Fund because of Defendants' failure to submit contractually-required remittance reports and furthermore, to ensure that the remittance reports submitted by Defendants are correct. See Exhibit 1, Montemore Declaration, at ¶¶5-7, 13-14. The Company's obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Company to produce its records for an audit for all periods in which the Defendants are obligated to make contributions to the Pension Fund so that a precise determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendants for all additional amounts found to be due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, therefore, requests that the Court enter a judgment against Defendants, jointly and severally, in the amount of $94,572.45, which includes $3,257.75 in attorneys' fees and costs, order Defendants to submit the remittance reports and corresponding contributions together with interest and liquidated damages for the period January 2002 through August 2006 and order Company to produce its payroll books and related records for an audit for all periods in which the Company is obligated to make fringe benefit contributions to the Pension Fund.

In light of the clear statutory intent of ERISA, it is respectfully requested that this Court grant the Pension Fund the relief requested in the Motion for Default Judgment.

> Respectfully submitted,
>
> JENNINGS SIGMOND, P.C.
>
> BY: s/ Kent Cprek
> KENT CPREK
> Bar No. 478231
> SANFORD G. ROSENTHAL
> Bar No. 478737
> The Penn Mutual Towers, 16th Floor
> 510 Walnut Street, Independence Square
> Philadelphia, PA 19106-3683
> (215) 351-0615/0669
> Attorneys for the Fund

Date: September 28, 2006
OF COUNSEL:
Jessica L. Tortella
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669