IN WITNESS WHEREOF, we the undersigned EMPLOYER and District Council No. 6, International Union of Painters and Allied Trades, hereunto affix our hands this day of June 1, 2001.

_CH-TK Painting Inc_
_____ Company Name

x _____
Employer's Signature

06-04-02

DISTRICT COUNCIL NO. 6
INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES, AFL-CIO.

_____ Executive Secretary

IN WITNESS WHEREOF, we the undersigned duly authorized representatives of the Northern Ohio Painting and Taping Contractors Association, Inc., and District Council No. 6, International Union of Painters and Allied Trades, hereunto affix our hands as such representatives for and in behalf of such organizations, their officers and agents and members, at Cleveland, Ohio on this first day of June, 2001.

DISTRICT COUNCIL NO. 6 &  
INTERNATIONAL UNION OF  
PAINTERS AND ALLIED TRADES  
AFL/CIO  

Terrance J. Conroy  
Jeffery Newbould  
Terrence O'Neil  
Stephen Protz III  

NORTHERN OHIO PAINTING &  
TAPING CONTRACTORS  
ASSOCIATION, INC.  

Don Hansen  
Nick Pontikos  
Brad Pinchot  
Henry Oestrike  



22-2006 THU 01:22 PM    PAINTERS ALLIED TRADES    FAX No. 4402346527    P. 001

# WORKING AGREEMENT

BETWEEN

INTERNATIONAL UNION OF PAINTERS AND ALLIED
TRADES AFL-CIO DISTRICT COUNCIL NO. 6 OF
CLEVELAND, OHIO

AND

NORTHERN OHIO PAINTING AND TAPING
CONTRACTORS ASSOCIATION, INC.
CLEVELAND, OHIO

2001-2005

# INDEX

| Classification | Article Section page |
| --- | --- |
| Article I ............................................................................1 | |
| Recognition and Coverage of Agreement | |
| Article II ...........................................................................2 | |
| Rules for Employers | |
| Article III ..........................................................................4 | |
| Wages and Hours | |
| Article IV ..........................................................................7 | |
| Fringe Benefits | |
| Article V ...........................................................................9 | |
| Spray Painting and Safety | |
| Article VI ........................................................................10 | |
| Taping | |
| Article VII .......................................................................10 | |
| Joint Trade Board | |
| Article VIII .....................................................................12 | |
| Cost Finding | |
| Article IX ........................................................................12 | |
| Placement Committee | |
| Article X .........................................................................12 | |
| Grievance Procedure | |
| Article XI ........................................................................13 | |
| Joint Labor – Management Uniform Drug/Alcohol Abuse Program | |
| Article XII ......................................................................16 | |
| Apprentice Education and Promotion Program | |

must be considered a home town Employee, whether he is ordered to the job or is hired out on the job site. The Employer party hereto shall, when engaged in work outside the geographical jurisdiction executed by the Employers of this industry and the affiliated Local Unions in that jurisdiction, including wages, hours, conditions, fringe benefits and grievance procedures set forth therein provided, that as to members of District Council No. 6 who are brought into an outside jurisdiction shall be entitled to receive all wages and conditions effective in either the home or outside jurisdiction, whichever is more favorable for the Employee.

(d) In order to provide continuity of coverage: Employer fringe benefit payments shall be made only to the funds in the employees home area as required by the Collective Bargaining Agreement prevailing in that area. There shall be no duplication of any fringe fund payment requirements.

Section 10 - **Method and Time of Paying Wages.** (a) Employees shall be paid once each week in currency or by check and shall receive their pay on the job not later than quitting time on pay-day.

(b) Employees temporarily laid off because of job completion are to receive their pay on the regular pay- day.

(c) Employers not signatory to the local Working Agreement when employees are laid off or discharged they shall be paid in full at the time of said lay-off or discharge. If employee is not paid off then Section C will apply. Out of Town employers laid off is pay-off.

(d) If an Employee voluntarily quits a job, it is his/her responsibility to report his/her time to the Employer immediately, and shall be paid on the regular payday. Employees discharged for cause shall be paid within twenty-four (24) hours and the Employer is responsible for the delivery of the check. If the check is not received within twenty-four (24) hours, the Employee shall receive eight- (8) hours pay for each twenty-four- (24) hour waiting period, Saturday and Sunday excluded.

(e) Wage and fringe differences, including Health-Welfare, Pension and Promotion, shall be reported within four (4) weeks of the first infraction.

(f) Any Employee, for any reason, who does not get the paycheck by the regular payday Section C above, will apply.

Section 11 - **Retaining Pay.** No more than three- (3) days pay shall be retained by the Employer at the end of the working week.

Section 12 - Employees shall be paid up to five dollars ($5.00) per day per Employee when there is no free parking. Receipts must be turned in.

## Article IV
## FRINGE BENEFITS

Section 1 - The Employer agrees to be subject to the provisions of the agreements and declarations of trust and/or other governing instruments of the Painting Industry Insurance Fund, the Painting Industry Profit Sharing Annuity Plan, International Painters and Allied Trades Industry Pension Fund, t Apprentice Education and Industry Promotion Fund and a other fringe benefit, industry and related funds or accounts esta lished by the parties to this Agreement (collectively the "Func or "Plans").

a. The Employer shall also be bound by the terms, provisio and conditions of all rules, regulations, resolutions and amer ments thereto promulgated by the Trustees of the Plans in acco dance with the aforesaid Trust Agreements, whether curren existing or promulgated during the term of this Agreement.

b. The Employer hereby accepts the designation of t Employer Trustees of the Plans and any successor Truste appointed in accordance with the provisions of the Tru Agreements.

c. The Employer acknowledges that the Plans provide cove age and benefits to and the Employer is obligated to make co tributions for and on behalf of all its employees who are mei bers of the collective bargaining unit represented by the Unic without regard to membership in the Union.

d. The participating Employers and the Union further acknow edge and agree that the Trustees shall have the sole and exclusi authority to determine the rules of eligibility to participate in sa plans and the benefits and coverages to be provided therein. N person shall have a vested right to participate in any Plan or receive any benefit or coverage from any Plan except as expres ly stated therein.

Section 2 – a. **Annuity.** There is established within the fram work of the Painting Industry Collective Bargaining Agreemei an Employer-paid Defined Contribution Plan hereinafter calle the Painting Industry Profit Sharing Annuity Plan, to which a Employers shall pay in excess of the regular established wage, a amount as established by this Agreement for every hour worke commencing May 1, 2001 for their bargaining unit employe covered by this Agreement.

b. **Health and Welfare.** There is established within the fram work of the Painting Industry Collective Bargaining Agreemei an Employer-paid Health and Welfare Plan hereinafter called t PAINTING INDUSTRY INSURANCE FUND, to which a Employers shall pay in excess of the regular established wage, amount as established by this Agreement per hour for every ho worked commencing May 1, 2001, for their bargaining ui employees covered by this Agreement. Such payments shall used for the maintenance and operation of the Health and Welfa Plan.

Section 3 - International Painters and Allied Trades Indus Pension Fund.

a. Commencing with the first day of October 2001, and for i duration of the Agreement, and any renewals or extension the of, the Employer agrees to make payments to the Internatio Painters and Allied Trades Industry Pension Fund (IUP Industry Pension Fund) for each employee covered by t Agreement, as follows:

b. For each hour or portion thereof for which an emplo

receives pay, the Employer shall make a contribution of $3.00 to the above named Pension Fund. May 1, 2002 - $3.45, May 1, 2003 - $3.90, May 1, 2004 - $4.35. The contribution rates set forth in this paragraph can be reduced pursuant to the Merger Agreement entered into between the Trustees of the International Painters and Allied Trades Industry Pension Fund and Trustees of Painting Industry Pension Plan executed on or about October 15, 2001.

c. For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable. For the purpose of this Agreement the contributions on overtime hours will be payable on only actual hours worked.

d. Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes but is not limited to apprentices.

e. The payments to the Pension Fund required above shall be made to the IUPAT Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

f. The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

g. All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the provisions of this Agreement or said Declaration of Trust.

Section 4 – The payments shall be made by the Employer monthly, no later than the 15th day of the month following the end of the month when bargaining unit employees performed work, with a weekly breakdown of the hours, names of the Employees and their social security numbers, hours worked, on forms specifically provided for this purpose by Trustees of the Fringe Benefit Funds. It shall be the obligation of the Employer to have and use the official reporting forms. If the Employer maintains its payroll records and information on computer or electronic equipment and desires to use and submit the required information in the form printed out by the computer or other electronic equipment, the Employer may use and submit such forms other than official reporting forms; provided, however, the Trustees shall have the right to reject such forms if they are not consistent or reconcilable with the official form.

Section 5 - If the Board of Trustees of the Health and Welfare Fund believe additional contributions or payments are needed during the term of this Agreement to operate the Health and Welfare Fund, the Trustees shall recommend such change in writing to the parties to this Agreement.

Section 6 - The payments made to the Funds in accord[ance] with the terms of this Agreement shall be sent with the appropri[?]ate reporting form to the designated depository when due[?]. reporting periods in which the Employer did not have Employees working, he shall submit a reporting form mar[ked] "NO EMPLOYEES WORKING". If the Employer has comple[t]ed all work in the jurisdiction covered by this Agreement and w[ill] not have Employees working in the jurisdiction thereafter, shall note on the reporting form for his last reporting peri[od] "WORK COMPLETED - FINAL REPORT".

Section 7 - The failure of an Employer to pay the contribut[ions] payroll deductions, delinquency assessments or other mon[ies] required here-under, when due, shall be a violation of th[e] Agreement as well as a violation of said Employer's obligati[ons] under the agreements and declarations of trust. Nonpayment [by] an Employer of any contributions, payroll deductions, del[in]quency assessments or other monies when due, shall not rel[ieve] any other employer of the obligation to make payment of [same] when due. In the event that an Employer submits a check [in] payment to the Funds and it is returned by his bank stam[ped] "Insufficient Funds", said check must be replaced, and Trustees may require that future payments must be made [by] either certified check, cashier's check or money order.

Section 8 - An Employer who is delinquent in making pa[y]ments as herein required or who fails to send the reports on ti[me] shall be assessed as liquidated damages, a delinquency as[sess]ment of ten percent (10%) of the total amount due plus one [and] one-half percent (1.5%) of the total due per calendar mo[nth] thereafter. Provided, however, that with respect to delinque[ncies] to the IUPAT Industry Pension Fund a delinquent employer [shall] be assessed liquidated damages, interest and late fees in ac[cor]dance with the IUPAT Pension Fund's Trust Agreement [and] Rules and Regulations.

Section 9 - Whenever an Employer is delinquent, the F[und] Administrator shall, within ten (10) days after becoming a[ware] or otherwise being notified of the delinquency, notify the Su[rety] Company which supplied the bond for that Employer of the f[act] of said delinquency and shall at the same time send a copy [of] such notice to the Association and Union.

Section 10 - Whenever an Employer is delinquent, the Un[ion] may, upon seventy-two (72) hours written notice to the deli[n]quent Employer, withdraw Employees from the employmen[t of] the Employer, until such amounts that are due and owing [are] paid, without such withdrawal being considered a breach of [any] of the provisions of this Agreement, provided the Employer [fails] to show adequate proof that the delinquent amounts have b[een] paid to the Funds.

a. Each Employer agrees to permit an audit or examinatio[n of] such books, records, papers or reports of the Employer as may [be] necessary in the discretion of the auditor, to determine whet[her] the Employer is making full and prompt payment of all su[ms] required to be paid to the Funds. The audit of examination [shall] be performed by an auditor or agent designated by the repres[en]tative of the Funds. If, as a result of said audit or examinatio[n, a] deficiency or more in payments to a Fund is discovered, [the] Funds may assess their costs in performing the audit or exami[na]tion to the Employer, and said cost shall be collectible [?]

other amount due from the Employer to the Funds.

Section 11 - The respective Trustees of the Funds, and their successor in office, shall be deemed to be the joint and several beneficiaries of this Agreement, for the purpose of enforcing the provisions of this section of the Agreement and shall, in addition to and with or without the Union, have standing to sue on this Agreement to enforce the terms hereof and of the respective agreements and declarations of trust and/or other governing instruments of the Funds and the payment by any Employer of all sums and contributions due to the Funds. A delinquent Employer shall also be liable for, and obligated to pay the audit fees, delinquent assessments provided for herein, reasonable interest, all court costs, attorney's fees and other expenses incurred in the collection of contributions due from said delinquent Employer and/or if the Trustees believe, in their sole discretion, it is necessary to commence litigation. The Trustees shall further have all such other relief (including temporary and permanent injunctive relief) and remedies against a delinquent Employer to which they may be entitled at law or in equity. The Trustees may compel and enforce the payment of contributions in any manner which they deem proper, and the Trustees may make such additional rules and regulations, which are binding upon the Employer as if fully rewritten, to facilitate and enforce the collection and payment hereof as they may deem appropriate.

Section 12 - An employer not presently a member of the Association who does not have two consecutive years as a non-delinquent contributing employer shall be required to make all payments referred to in this Article and the reports referred to in this Article IV on a weekly rather than, a monthly basis until said employer shall establish a two consecutive year record as a non-delinquent contributing employer. Any Employer who shall become thirty or more days delinquent in making fringe benefit payments required by this Agreement shall be required to make all payments and reports referred to in this Article IV on a weekly rather than monthly basis until said Employer shall have established a full one year record as a non-delinquent contributing Employer.

Section 13 - If an Employer fails to make contributions for the International fringe benefit plan within twenty days after the date required by the International Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision thereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the International Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

Section 14 - The International Plans adopted by the International Trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all time to treat contributions to the International fringe benefit plans as a deduction for Income tax purposes.

Section 15 - The Union and Association recognize and understand that the prompt and regular payment of contributions and ... of Employees for all of the Fringe Benefit Funds provided for in this Agreement, are an essential compliance with this Agreement in order to protect the Employees on whose behalf these contributions were negotiated and the Employer who honors his contract. Therefore, to assist in the orderly administration of these Funds, the contracting parties hereto empower and authorize the Board of Trustees of the various Funds to recommend to the Joint Trade Board whatever action is deemed appropriate, including decertification, if necessary, but within their discretion to enforce payment of contributions and/or amounts withheld by any Employer for failure to comply with the contractual provisions covering contributions and payments to the aforementioned Funds.

## Article V
## SPRAY PAINTING AND SAFETY

For the purpose of safety, the PDCA Safety Handbook and Program may be used as a guide for all Employers. All safety programs must be approved by the Joint Trade Board.

Section 1 - **Health and Safety.** (a) The Employer shall provide adequate protective clothing, safety shoes, helmets, gloves, safety glasses or goggles, respiratory equipment, ventilation equipment and skin protection as required by job situation and materials used.

(b) All applicable sections of the "Specific Safety Requirements of the Industrial Commission of Ohio, Relating to Construction effective April 1, 1986 (IC-3)" and Occupational Safety and Health Act provisions will be part of this Working Agreement.

(c) Any condition on the job, which is a danger to the safety or health of the men working there, shall be a negotiable grievance at once. When a dangerous condition exists, a union member on the job may go to the nearest telephone to call the District Council. If the Business Representative comes on the job and finds that the danger is such that the job should not be allowed to continue, he shall be authorized to stop that part of the job where the dangerous situation prevails until it is remedied.

(d) Proper toilet facilities shall be provided. In the absence of such facilities, the Employee shall be allowed to use the nearest available toilet facility.

(e) Aluminum ladders and planks will not be used when there is danger that they may come in contact with any electric wire supply.

(f) The Employer shall provide effective respirators for Employees working in spray mist areas. Spraying with flammable materials shall not be performed where the mist areas are exposed to fire or electric arcs. Work with the airless spray gun shall be conducted with due regard for the danger of contact with the spray fan. All workers shall be warned of this danger if they are to operate or clean an airless spray gun. Epoxy, xylol, polyurethane, and other irritant or dangerous vapors which cannot be ventilated by fan must be so ventilated. Fans will be used as exhaust fans and work will proceed from the point nearest the fan to work away from the fan so that the worker will be in an area of fresh air supply. In closed areas which cannot be effectively ventilated, an air supply hood, mask, or other suitable device will be provided for a source of clean air.